UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

D.C., an incompetent adult; by and through his guardian ad litem DeNeice Murphy,

Plaintiff,

v.

MODESTO CITY SCHOOLS and STANISLAUS COUNTY OFFICE OF EDUCATION,

Defendants.

Case No. 1:22-cv-01481-HBK

ORDER GRANTING JOINT PETITION FOR INCOMPETENT'S COMPROMISE [1]

(Doc. No. 1)

Before the Court is a Joint Petition for Approval of Incompetent's Compromise filed by the minor Plaintiff D.C., by and through his guardian ad litem, DeNeice Murphy ("Plaintiff") and Modesto City Schools and Stanislaus County Office of Education (collectively "Defendants"). ("Petition," Doc. No. 1). The Court found the Petition appropriate for resolution without a hearing (Doc. No. 15). *See* Fed. R. Civ. P. 78(b); L.R. 230(g). Having considered the papers filed in support of the Petition and controlling law, the Court GRANTS the Petition. L.R. 202(b)(2).

**PROCEDURAL BACKGROUND**

On April 28, 2021, Plaintiff D.C., an incompetent male adult, by and through his mother

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

and guardian ad litem DeNeice Murphy, filed a Second Amended Special Education Due Process Complaint Notice hearing with the Office of Administrative Hearings ("OAH") pursuant to 20 U.S.C. §1415(b)(7)(A) against Defendants Modesto City Schools and Stanislaus County. ("Complaint," Doc. No. 1-1). The Complaint alleged violations of special education laws against the Defendants from approximately April 2020 through April 2022. (*Id*.). Due to these alleged deficiencies, and without any educational plan to support him during the COVID-19 pandemic, D.C. suffered damages, became homeless, and was incarcerated. (*Id*.). Defendants deny any wrongdoing. (Doc. No. 1 at 4).

On August 17, 2022, the parties participated in a settlement with OAH. (*Id*.). Eventually, the parties reached a global settlement on September 20, 2022. (*Id*., "Agreement"). A copy of the Agreement is attached as Exhibit 2 to the Petition. (Doc. No. 1-2). The OAH has continued the due process hearing pending the Court's approval of the Agreement. (Doc. No. 1 at 4).

On August 30, 2023, Plaintiff filed a Status Report advising that Plaintiff was released from the Stanislaus County jail on June 16, 2023, placed on psychiatric hold, and then transferred to a Stanislaus County Psychiatric Health Facility. (Doc. No. 17 at ¶¶ 1, 4). He currently lives with his mother, DeNeice Murphy, who continues to work with a private psychiatrist to find therapeutic medication to address D.C.'s current presentment of issues. (*Id*., ¶¶2, 6). D.C. has not expressed an interest in returning to any school-based program despite Defendants' willingness to continue to provide educational services. (*Id*., ¶8).

**APPLICABLE LAW**

When reviewing settlements with minors or an incompetent person, "have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of [such] litigants." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). This requires the court to "independently investigate and evaluate any compromise or settlement of a minor's[2] claims to assure itself that the minor's interests are protected, even if the settlement has been recommended

[2] While various quotations from cited materials herein use the term "minor," the Court considers any such citations or discussion to be applicable to the settlement of the incompetent Plaintiff's claims consistent with the use of "minor" and "incompetent" in both Fed. R. Civ. P. 17(c) and L.R. 202.

or negotiated by the minor's parent or guardian ad litem." *Salmeron v. U.S.*, 724 F.2d 1357, 1363 (9th Cir. 1983) (citation omitted).

Local Rule 202(b) mandates "[n]o claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise." "In actions in which the minor or incompetent is represented by an appointed representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise shall first be approved by the state court having jurisdiction over the personal representative." L.R. 202(b)(1). In all other actions, the motion for approval of a proposed settlement shall be filed pursuant to Local Rule 230, and must disclose, among other things, the following:

> the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none have previously been prepared or additional experts' reports if appropriate under the circumstances. Reports protected by an evidentiary privilege may be submitted in a sealed condition to be reviewed only by the Court in camera, with notice of such submission to all parties.

L.R. 202(b)(2). Further, if the minor or incompetent is represented by an attorney, the following must be disclosed:

> the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount.

L.R. 202(c).

A court's scope of review is limited to "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's

specific claim, and recovery in similar cases." *Robidoux,* 638 F. 3d at 1181-82. An assessment of the settlement is performed "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel – whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citations omitted).

Notably, the holding of *Robidoux* was "limited to cases involving the settlement of a minor's federal claims," and the Circuit did "not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims." 638 F.3d at 1179 n.2. However, district courts have extended the application to state law claims. *See Calderon v. United States*, 2020 WL 3293066, at *3 (E.D. Cal. June 18, 2020) (noting that although *Robidoux* "expressly limited its holding to cases involving settlement of a minor's federal claims ... district courts also have applied this rule in the context of a minor's state law claims.") (collecting cases).

**ANALYSIS**

D.C. is a male disabled adult born on September 18, 2002 and residing in Modesto located within County of Stanislaus, California. (Doc. No. 1-1 at 1). D.C. is a special education student with exceptional needs within the meaning of that term under California Education Code § 56026. (Doc. No. 1 at 2). D.C. is an individual with mental impairments that substantially limit many major life activities within the meaning of 34 C.F.R. § 104.3(j). (*Id*.). Defendant Modesto City Schools is a public entity duly incorporated and operating under California law as a school district; and is a recipient of federal financial assistance subject to the requirements of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. (*Id*.). Defendant Stanislaus County Office of Education is a public entity duly incorporated and operating under California law as a local educational agency; and is a recipient of federal financial assistance subject to the requirements of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. (*Id*. ay 2-3).

**Local Rule 202**

The Court incorporates the alleged facts as set forth in the Complaint, which allegations clearly come with the purview of Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, *et seq*. and violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. and 20 U.S.C. § 1415. (Doc. No. 1-1). The gravamen of the Complaint is that Defendants' alleged failure to provide D.C. with numerous educational services in 2019-2021 caused D.C. to suffer severe academic deficiencies and consequences to his mental health disorders, including PTSD, depression, separation anxiety, ADHD and conduct disorder, resulting in D.C. becoming homeless and eventually incarcerated. (*See generally id*.). Thus, the Court applies the *Robidoux* standard in its review of the Agreement. *See, e.g.*, *Est. of Sauceda v. City of N. Las Vegas*, 2020 WL 1982288, at *3 n.3 (D. Nev. Apr. 15, 2020) ("The Ninth Circuit has made clear that its standards apply in federal question cases."). The Court finds the Petition, and supporting documents, satisfy Local Rule 202(b)(1). (Doc. No. 1, 1-1).

The Petition also addresses the requirements of Local Rule 202(c), concerning disclosure of the attorneys' interest. (Doc. No. 1-3). Specifically, counsel for Plaintiff, Daniel Shaw, declares that: he was retained by DeNeice Murphy, education rights holder for D.C., to represent D.C., her incompetent son, in connection with D.C.'s educational claims. (*Id*., ¶3). Counsel neither became involved in the case at the insistence of either Defendant, nor does he have any relationship with either Defendant. (*Id*., ¶¶ 5-6). Further, as discussed in greater detail below, due to the fee shifting provisions appliable in these cases, Counsel took the case on a contingent basis. Counsel proffers that while the agreed upon fee does not cover the total fees and costs to date, he has elected to take a lesser amount and any remaining fees or costs will not be the responsibility of D.C. or his mother. (*Id*., ¶¶4, 7). The Court finds the Petition satisfies the requirements of the Local Rule 202(c).

**Settlement**

The Court now turns to determine whether the amount of the net settlement to the incompetent adult is fair and reasonable and finds, for the reasons explained below, that the "net amount distributed to [D.C.] in the settlement is fair and reasonable, in light of the facts of the case, the [D.C.'s] specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. Once approved, the Agreement will fully, finally, and forever settle any and all known and unknown claims, rights, demands, or causes of action between D.C. and Defendants that were

raised or could have been raised up to the date this Court approves the Agreement. (Doc. No. 1-2 at 4-5, ¶¶ 3-4(a), (b)(c)). The Parties have executed the Agreement. (*Id*. at 7-9).

Defendants will pay the sum of one hundred and twenty-five thousand dollars ($125,000.00), to Plaintiff's Counsel's client trust account. (Doc. No. 1 at 5:4-10). Plaintiff's Counsel will then retain an estate planning attorney and use a portion of the settlement amount to establish a special needs trust, which will cost an estimated six thousand dollars ($6,000.00). (*Id*.).

Defendants will pay Plaintiff's Counsel's firm, Snyder & Shaw, LLP, forty nine thousand dollars ($49,0000.00) for reasonable attorneys' fees and costs in this matter. (*Id*. at 5:11-15). Plaintiff will not be responsible for any further fees or costs. (*Id*.).

**Special Needs Trust**

The Parties proffer that the Agreement provides for immediate cash payments to D.C. through a special needs trust under 42 U.S.C. § 1396p(d)(4)(A) and California Probate Code § 3600, *et seq*. (*Id*. at 5:17-19). California Probate Code § 3604(b) provides that a special needs trust may be established only if the Court determines all the following:

> (1) [t]hat the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap;
>
> (2) [t]hat the minor or person with a disability is likely to have special needs that will not be met without the trust; and
>
> (3) [t]hat money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Cal. Prob. Code § 3604(b)(1)-(3).

The parties submit the requirement of Section (b)(1) is met because D.C. is a disabled and severely mentally ill adult special education student, whose disabilities substantially limits him in a variety of major life activities, including his ability to think, read, socialize, and perform activities of daily living. D.C. was previously homeless and became incarcerated. On September 19, 2022, the Stanislaus Superior Court determined D.C. was incompetent to stand trial. (Doc. No. 1 at 6, ¶3).

As to Section (b)(2), the parties submit D.C. is likely to have special needs that will not be met without the special needs trust. Placement of funds in a special needs trust will ensure D.C. remains eligible for public assistance programs, which benefits are vital to D.C.'s continued support, safety, and personal well-being. Additionally, these essential needs include personal care assistance, in-home supports, independent living services, medical services, and other palliative care, none of which would be met or available without the protection offered by a special needs trust. (*Id*., ¶4).

As to Section (b)(3), the parties submit that the money to be paid to the trust does not exceed the amount that appears to be reasonably necessary to meet the special needs of D.C. (*Id*., ¶5).

The Court finds the parties have met the requirements for the establishment of a special needs trust pursuant to California Probate Code § 3604(b).[3]

**Settlement Amount and Outcomes in Similar Cases**

The parties proffer that the net recoveries to D.C. through the special needs trust will be substantial, and more than sufficient to cover the costs of care for D.C. and to provide the compensatory services he requires because of the educational deficiencies resulting in the alleged incidents described in the Complaint. (Doc. No. 1 at 10). The Parties explain the Agreement allows D.C.'s mother to use funds from the trust for the purposes of providing the compensatory support and services he requires. (*Id*. at 10-11). Plaintiff's counsel believes the settlement is "fair and reasonable," and Defendants dispute causation of D.C.'s injuries and damages. (*Id*. at 11). The parties do not claim that D.C. suffered any physical injuries.

As support, the parties refer the Court to settlements that are in line with or less than the recovery here. (Doc. No. 1 at 9-10). Specifically, the parties direct the Court to *C.F. v. San Lorenzo Unified Sch. Dist*., 2016 WL 4521857, at *2 (N.D. Cal. Aug. 29, 2016). In *C.F.*, plaintiff initiated claims arising under the Individuals with Disabilities Education Act after the school district deemed C.F. ineligible to receive special education services after C.F's parent had

[3] The Parties further submit that the special needs trust will "fully comply" with California Rule of Court, Rule 7.903. (Doc. No. 1 at 6, ¶6).

requested that the district perform special education testing before C.F. started kindergarten. Although the district complied with testing, it concluded C.F. was ineligible to receive special education services. While the action was pending, the district reevaluated C.F. and concluded C.F. was eligible to receive special education. The court approved a total settlement in the amount of $65,000, with $10,000 of the total fund going to provide C.F. with educational services, and $55,000 in attorney fees. The court noted "the primary goal of this action was to ensure C.F. received the special education services he needs. The district has agreed to provide those services and to compensate C.F. for any educational opportunities he lost while this litigation was ongoing." *Id*.

In *A.A.*, the court approved a settlement where $63,200 would be deposited into a special needs trust, and an additional $10,000 in settlement funds would be dedicated to trust administration, with the $63,200 "earmarked for a FAPE buyout, i.e., to provide A.A., Jr. with a free and appropriate education through the 2020–2021 school year, at which time his eligibility for services under the IDEA comes to an end." *A.A. on behalf of A.A. v. Clovis Unified Sch. Dist*., 2018 WL 1167927, at *3-4 (E.D. Cal. Mar. 6, 2018), *report and recommendation adopted sub nom*., 2018 WL 1453243 (E.D. Cal. Mar. 23, 2018).

In *G.C.*, plaintiff sought implementation of G.C.'s IEP and compensatory education due to the defendant's failure to implement G.C.'s IEP during distance learning over the 2019–20 and 2020–21 school years. The court approved a settlement under the terms of which defendant would provide plaintiff with a total of $108,500 to encompass any future FAPE obligations through June 30, 2021, which is when G.C. would age out of eligibility for special education and related services. After attorney fees and costs, plaintiff would receive $89,000. *G.C. By & Through Clark v. San Diego Unified Sch. Dist*., 2021 WL 3630112, at *2–3 (S.D. Cal. Aug. 17, 2021*), report and recommendation adopted sub nom*. 2021 WL 4060534 (S.D. Cal. Sept. 3, 2021).

In *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch*. Dist., No. 1:11-CV-01112-SAB, 2013 WL 275271, at *2 (E.D. Cal. Jan. 23, 2013), plaintiffs alleged that the school failed to provide proper programs, services and activities to D.C. to accommodate his disability—attention deficit

hyperactivity disorder and specific learning disability— and alleged that the school improperly used restraints on D.C. on multiple occasions, including one occasion where D.C. sprained his ankle and received medical treatment. The court approved a settlement in total amount of $65,000.00, with $30,000.00 to be disbursed to D.C. (held in a Uniform Minor's Account, with T.C. as custodian), $18,379.00 to T.C., $6,689.50 to legal fees, $6,689.50 to other legal fees, and $3,242.00 to Medi–Cal to satisfy potential liens related to D.C.'s medical treatment.

The Court finds these cases provide support for finding the Agreement fair and reasonable. The Court additionally has conducted its own research and found cases that similarly provides support for finding the Settlement Agreement to be fair and reasonable. *T.L. By and Through Layne v. Southern Kern Unified Sch. Dist*., 2019 WL 3072583 (E.D. Cal. July 15, 2019), *report and recommendation adopted*, 2019 WL 3459151 (E.D. Cal. July 31, 2019) (court approved settlement under which minor was awarded $24,750.00 based on allegations that the district did not comply with IDEA requirements when removing T.L. form his regular home school); *R.Q. v. Tehachapi Unified Sch. Dist*., 2020 WL 5940168 (E.D. Cal. Oct. 7, 2020), *report and recommendation adopted*, 2020 WL 6318223 (E.D. Cal. Oct. 28, 2020) (court approved settlement under which school district paid a total amount of $34,000.00 based on allegations that "the refusal to draft a Behavior Intervention Plan to address the [minor's] behavior [] interfered with his ability to access his education.").

**Attorney's Fees**

Generally, attorney's fees in the amount of twenty-five percent (25%) are the typical benchmark in contingency cases for minors. *McCue v. S. Fork Union Sch. Dist*., No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) ("It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors, subject to a showing of good cause to exceed that rate.").

In light of *Robidoux's* precedent, it may be error for this court to reject the settlement simply because the Court finds that the attorney fees sought are excessive. *See Velez v. Bakken*, 2019 WL 358703, at *2 n.4 (E.D. Cal. Jan. 29, 2019) (noting *Robidoux* makes a reduction of fees simply for finding them to be excessive error, finding attorneys' fees amounting to 46% of the

settlement, though higher than benchmark, was "not excessive because of counsel's experience with similar cases, the amount of time counsel spent investigating the claims, and the risk counsel took in pursuing this action on a contingency basis."). Plaintiff's counsel states that he is accepting $49,000 as full payment in this matter. Despite his fees and costs being more than this amount, counsel states that Plaintiff will not be responsible for any additional fee. (Doc. No. 1-3, ¶7). In consideration of the course of litigation, the facts of the case, and the total settlement amount, the Court does not find the attorney's fees excessive.

ACCORDINGLY, it is hereby **ORDERED:**

1. Joint Petition for Approval of Incompetent's Compromise (Doc. No. 1) is GRANTED.

2. Within in thirty days of the date of this Order, the Defendant's will issue a check in the amount of $125,000.00 to be deposited into Snyder & Shaw LLP's client trust account.

3. Snyder & Shaw LLP will use a portion of the settlement funds to pay an estate planning attorney to setup a special needs trust. Once the trust is established, Snyder & Shaw LLP will deposit the remaining funds in the special needs trust.

4. Additionally, the Defendants will pay a total amount of forty-nine thousand dollars ($49,000.00) for reasonable attorney's fees and costs to Snyder & Shaw LLP incurred because of the OAH administrative proceeding and threatened civil claims.

5. This Court will retain jurisdiction over the enforcement of the Settlement Agreement.

6. The Clerk shall terminate the pending motion (Doc. No. 11) on the docket and CLOSE this case.

Dated: September 18, 2023

Helena M. Barch-Kuchta
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE